# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Dawn Burke, | ) | 3:21-CV-01371 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Kilolo KIJAKAZI, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | JUNE 17, 2022 |
| *Defendant*. | | |

## MEMORANDUM OF DECISION

Kari A. Dooley, United States District Judge:

Plaintiff, Dawn Burke, brings this administrative appeal pursuant to 42 U.S.C. § 405(g). Plaintiff appeals the decision of Defendant, Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Commissioner"), denying her application for supplemental security income pursuant to Title XVI of the Social Security Act ("Act"). Plaintiff moves to reverse the Commissioner's decision on the basis that the Commissioner's findings are not supported by substantial evidence in the record and/or that the Commissioner did not render a decision in accordance with applicable law. The Commissioner responds that the decision correctly applies applicable law and is supported by substantial evidence in the record, and moves for an order affirming the Commissioner's decision. For the reasons set forth below, Commissioner's motion to affirm is GRANTED. (ECF No. 15) Plaintiff's motion to reverse or remand is DENIED. (ECF No. 14)

## Standard of Review

A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

1

of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(a); 1382c(3)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). In addition, a claimant must establish that their physical or mental impairment or impairments are of such severity that they are not only unable to do their previous work but "cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." *Id.* § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 416.920. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909" or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations;[1] (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if the claimant is unable to perform [her] past work, the Commissioner must finally determine whether there is other work in the national economy which the claimant can perform in light of their RFC, education, age, and work experience. *Id.* §§ 416.920(a)(4)(i)–(v); 416.909. The claimant bears the burden of proof with respect to Steps One through Four and the Commissioner

---

[1] Appendix 1 to Subpart P of Part 404 of C.F.R. 20 is the "Listing of Impairments."

bears the burden of proof as to Step Five. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Sczepanski v. Saul*, 946 F.3d 152, 158 (2d Cir. 2020).

The fourth sentence of § 405(g) of the Act provides that a "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). And it is well-settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The court does not inquire as to whether the record might also support the plaintiff's claims but only whether there is substantial evidence to support the Commissioner's decision. *Bonet ex rel. T.B. v. Colvin,* 523 Fed. Appx. 58, 59 (2d Cir. 2013). Thus, substantial evidence can support the Commissioner's findings even if there is the potential for drawing more than one conclusion from the record. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). The court can only reject the Commissioner's findings of facts "if a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). Stated simply, "if there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013).

**Factual and Procedural History**

On December 12, 2019, Plaintiff filed an application for disability insurance benefits[2] pursuant to Title II of the Act[3] and hospital insurance pursuant to Part A of Title XVIII of the Act,[4] alleging disability beginning January 1, 2011. (Tr. 294) On January 7, 2020, Plaintiff protectively filed an application for supplemental security income[5] pursuant to Title XVI of the Act,[6] alleging disability beginning September 20, 2015. (Tr. 301) These claims were initially denied on July 1, 2020, and upon reconsideration on October 28, 2020. (Tr. 48) On February 5, 2021, Plaintiff amended her applications to claim only supplemental security income pursuant to Title XVI of the Act—withdrawing her claims for disability insurance benefits and hospital insurance—and amended the alleged onset date of disability to April 25, 2018. (Tr. 394) Thereafter, a hearing was held before an Administrative Law Judge ("ALJ") on February 25, 2021. (Tr. 48)

On April 2, 2021, the ALJ issued a written decision denying Plaintiff's application for supplemental security income under Title XVI of the Act.[7] (Tr. 44–58) At Step One, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of April 25, 2018. (Tr. 51) At Step Two, the ALJ determined that Plaintiff had the following severe impairments: osteoarthrosis and allied disorders; depressive, bipolar and related disorders; disorders of back; carpal tunnel; substance addiction disorders (alcohol); and trauma and stressor

---

[2] The regulations for disability and disability insurance are found at 20 C.F.R. § 404.900 *et seq.*

[3] 42 U.S.C. § 401 *et seq.*

[4] 42 U.S.C. § 1395c *et seq.*

[5] The regulations for supplemental security income are found at 20 C.F.R. § 416.1400 *et seq.*

[6] 42 U.S.C. § 1381 *et seq.*

[7] The ALJ also dismissed Plaintiff's claims for disability insurance benefits and hospital insurance because Plaintiff was only insured for a period of disability and disability insurance benefits through December 31, 2014. (Tr. 48, 51) In light of the amendments to her applications, the ALJ noted that Plaintiff would not be entitled to a period of disability and disability insurance benefits because Plaintiff was not insured for the same on the amended alleged onset date of April 25, 2018. (Tr. 48); *see Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) ("An applicant must be insured for disability insurance benefits to be eligible for [social security disability] benefits."). Plaintiff does not challenge that decision on appeal.

related disorders. (*Id.*) At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the regulations.[8] (*Id.*) At Step Four, the ALJ found that Plaintiff had the RFC to perform light work[9] subject to several limitations, to include that Plaintiff could only occasionally climb ladders, ropes or scaffolds, occasionally crawl, and occasionally reach overhead with the left upper extremity. (Tr. 53) The ALJ determined that Plaintiff could frequently stoop, frequently reach in all other directions with the left upper extremity, and frequently handle and finger bilaterally. (*Id.*) The ALJ further found that Plaintiff could perform simple, routine tasks, use judgment limited to simple, work-related decisions, and deal with routine changes in the work setting. (*Id.*) At Step Five, the ALJ found that Plaintiff was capable of performing her past relevant work as a potato inspector and packer because this work does not require the performance of work-related activities precluded by her RFC. (Tr. 56) Moreover, the ALJ determined that, in addition to her past relevant work, there were a significant number of jobs in the national economy that Plaintiff also could have performed, to include working as a sorter, price marker and small parts assembler. (Tr. 57). The ALJ thus concluded that Plaintiff was not disabled under § 1614(a)(3)(A) of the Act from the alleged onset date of April 25, 2018, through the date of decision, April 2, 2021. (Tr. 58) Accordingly, the ALJ determined that Plaintiff was not entitled to supplemental security income under Title XVI of the Act.[10] (*Id.*) This timely appeal followed.

---

[8] *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1 (listing qualifying impairments).

[9] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . If someone can do light work, [courts should] determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

[10] On August 11, 2021, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1)

**Discussion**

Plaintiff contends that the ALJ's determination that she was not entitled to supplemental security income was predicated on legal error[11] and is not based on substantial evidence. Plaintiff advances two arguments on appeal. First, that the ALJ improperly assessed her ability for frequent reaching, handling and fingering. Second, that the ALJ improperly assessed her ability to remain sufficiently on task. The Commissioner rejects Plaintiff's contentions and argues that substantial evidence supports that ALJ's decision that Plaintiff was not disabled under the Act from the alleged onset date of April 25, 2018, through the date of decision, April 2, 2021. Upon review of the record evidence, the Court concludes that the ALJ's decision that Plaintiff was not disabled during the relevant time period and thus not entitled to supplemental security income is supported by substantial evidence.

    1.  <u>ALJ Properly Assessed Plaintiff's Ability for Reaching, Handling and Fingering</u>

Plaintiff claims that the ALJ improperly assessed her limitations with respect to reaching, handling and fingering. Specifically, Plaintiff argues that the ALJ's determination on this issue did not recognize contrary medical records, did not fully encompass the limitations observed by State agency medical consultant, Ricardo Ramirez, and did not sufficiently consider Plaintiff's subjective complaints of pain. The Commissioner argues that the record includes substantial evidence to supports the ALJ's determination. The Court agrees with the Commissioner.

The Commissioner's assessment of a claimant's RFC is based on all relevant medical and other evidence of record. 20 C.F.R. § 416.945. Medical evidence reveals that Plaintiff was treated for degenerative disc disease, osteoarthritis of her left shoulder and carpal tunnel syndrome of her right wrist. (Tr. 54) At the February 25, 2021 hearing, Plaintiff testified that she experienced

---

[11] The Court observes that Plaintiff's arguments rest solely on the ALJ's consideration of the evidence of record, and not on the ALJ's application of relevant legal principles.

chronic neck and back pain, as well as chronic hand pain that causes her difficulty with lifting, handling and manipulating objects. (Tr. 53–54) After careful consideration of the evidence, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record. (Tr. 54) Specifically, the ALJ found that Plaintiff could occasionally reach overhead with the left upper extremity and frequently reach in all other directions with the left upper extremity. (Tr. 55) The ALJ further found that Plaintiff could frequently handle and finger bilaterally. (*Id.*)

The ALJ's assessment of Plaintiff's limitations with respect to reaching and handling is consistent with the medical opinion of Ramirez. On October 24, 2020, upon review of the medical evidence, Ramirez determined that Plaintiff had "limited" ability with respect to forward, lateral and overhead reaching with her left upper extremity. (Tr. 213) Notwithstanding this limitation, Ramirez concluded that Plaintiff could frequently lift and/or carry (including upward pulling) ten pounds,[12] and had no exertional limitations with respect to pushing or pulling in her upper extremities or manipulative limitations with respect to handling or fingering. (*Id.*) Ramirez further found that Plaintiff could occasionally climb ladders, ropes and scaffolds, and had unlimited handling, fingering and feeling abilities. (*Id.*) Ramirez observed no additional limitations with respect to Plaintiff's physical RFC.[13]

---

[12] Ramirez also determined that Plaintiff could occasionally lift and/or carry (including upward pulling) twenty pounds. (Tr. 213)

[13] With respect to environmental limitations, Plaintiff notes that Ramirez limited her to avoid even moderate exposure to hazards, including operating machinery, but that this limitation was not reflected in the ALJ's decision. (Tr. 214) Plaintiff argues that this was error. "[The Commissioner] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources. . . . The most important factors [the Commissioner] consider[s] when . . . evaluat[ing] the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. § 416.920c(a). Plaintiff's contemporaneous statements during her treatment demonstrate that Plaintiff regularly drove a vehicle to appointments as well as back and forth from Connecticut to Florida. (Tr. 537, 550, 551, 557) Plaintiff's activities of daily living as well as objective medical assessments demonstrate that Plaintiff was able to operate machinery during the relevant time period. *See* 20 C.F.R. § 416.945 ("[The Commissioner] will consider any statements about what [the claimant] can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. . . . [The Commissioner] will also consider descriptions and observations of

The ALJ found Ramirez's determinations to be persuasive and supported by objective evidence of record, which revealed physical symptoms but otherwise normal strength and mobility. (Tr. 55) For example, on June 27, 2020, consultative examiner, Hellen Kim, M.D., indicated that Plaintiff demonstrated 5/5 grip strength bilaterally, 5/5 motor strength in her bilateral wrists and fingers, full range of motion in her bilateral wrists and hands, and normal reflexes and sensation in her bilateral upper extremities. (Tr. 620–22) Dr. Kim particularly found that Plaintiff could make fists bilaterally, could fully extend her hands bilaterally, and had opposable fingers bilaterally. (Tr. 622) Moreover, Dr. Kim observed that Plaintiff was able to dress and undress, button and unbutton, zip and unzip, tie shoes bilaterally, pick up coins from a flat surface, and get up and down from the chair and exam table. (*Id.*) Thereafter, on January 8, 2021, Plaintiff underwent a right carpal tunnel release. (Tr. 844) During a November 23, 2020 consultation for the operation, Plaintiff demonstrated active range of motion of her bilateral elbows and wrists without significant pain. (Tr. 784) Plaintiff also demonstrated near normal grip strength bilaterally. (*Id.*) Treatment notes following Plaintiff's surgery indicate no complications from the procedure. (Tr. 919) On January 22, 2021, Plaintiff was able to make a full fist with the right hand and had intact sensation. (*Id.*) The ALJ's consideration of Ramirez's medical opinion was properly supported by and consistent with evidence of record. *See* 20 C.F.R. § 416.920c(a) ("The most

---

[the claimant's] limitations . . . provided by [the claimant] . . . or other persons.") (citing § 416.913). The ALJ properly considered Ramirez's opinion in light of the additional evidence of record. Regardless, Plaintiff does not demonstrate or even argue that including this limitation in the RFC would have rendered her unable to perform her past relevant work or the other jobs identified as available in the national economy. Any error in failing to include the "no hazards" limitation, was therefore harmless. *See Wetzel v. Berryhill*, 783 F. App'x 44, 47 (2d Cir. 2019) ("[E]ven if the ALJ had not made [an] error [at step four], there is 'no reasonable likelihood' that he would have changed his disability decision because the ALJ identified [at step five] at least three other jobs in the national economy that [claimant] is capable of performing."); *see also Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 890 (2d Cir. 2007) ("[E]ven if the step four analysis were to be resolved in plaintiff's favor, we would still have to conclude that substantial record evidence supports the ALJ's conclusion at step five that [plaintiff] is not disabled because work exists in significant numbers in the national economy that [she] can still perform . . . . Such evidence was sufficient to allow the Commissioner to carry his burden at step five."); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (finding remand unnecessary where the ALJ's error would not have affected the disability determination).

important factors [the Commissioner] consider[s] when . . . evaluat[ing] the persuasiveness of medical opinions . . . are supportability . . . and consistency.").

Plaintiff next asserts that the ALJ did not sufficiently consider her subjective complaints of pain when assessing her ability to reach, handle and finger in formulating the RCF. "[W]hen considering a claimant's symptoms, including allegations of pain, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence. . . .'"[14] *Robinson v. Colvin*, No. 3:14 CV 683 JGM, 2015 WL 4759068, at \*1 (D. Conn. Aug. 12, 2015) (citing 20 C.F.R. § 416.929(a)). "[W]hile an ALJ is required to take the claimant's reports of pain and other limitations into account, 20 C.F.R. § 416.929, [an ALJ] is not require[d] to accept the claimant's subjective complaints without question." *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) (internal quotation marks omitted).

> The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations. At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § [416.929](b). That requirement stems from the fact that subjective assertions of pain alone cannot ground a finding of disability. 20 C.F.R. § [416.929](a). If the claimant does suffer from such an impairment, at the second step, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. *Id*. The ALJ must consider [s]tatements [the claimant] or others make about [her] impairment(s), [her] restrictions, [her] daily activities, [her] efforts to work, or any other relevant statements [she] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings. . . .

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted; citations omitted).

---

[14] "Objective medical evidence includes medical signs and laboratory findings[,] and such evidence is considered along with a claimant's statements or reports, the statements or reports from a treating or nontreating source, and others about [the claimant's] medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence." *Robinson v. Colvin*, No. 3:14 CV 683 JGM, 2015 WL 4759068, at \*1 (D. Conn. Aug. 12, 2015) (internal quotation marks omitted).

Throughout her treatment, Plaintiff reported chronic pain and discomfort in connection with her impairments. Specifically, on February 23, 2020, Plaintiff complained of pain and weakness in her left upper extremity. (Tr. 598–99) On March 13, 2020, Plaintiff reported her pain in her left shoulder as a 10/10. (Tr. 605) During the November 23, 2020 consultation for her right carpal tunnel release, Plaintiff similarly reported right hand pain as an 8–10/10 with use. (Tr. 784; 915) Moreover, Plaintiff testified during the February 25, 2021 hearing that she continued to experience chronic hand pain that caused her difficulty with lifting, handling and manipulating objects. (Tr. 84–85)

Objective medical evidence, however, demonstrates that Plaintiff's pain had largely subsided with treatment and did not otherwise limit her ability to perform work related activities. With respect to Plaintiff's left shoulder pain, there is no medical evidence of record beyond April of 2020 indicating that Plaintiff sought treatment for her left shoulder pain or that Plaintiff's left shoulder pain persisted. (Tr. 821) And although an E.M.G. was performed on September 14, 2020 to assess Plaintiff's bilateral upper extremity pain, the report indicates normal findings with respect to Plaintiff's left upper extremity. (Tr. 907–08) With respect to Plaintiff's right hand pain, medical records following her right carpal tunnel release indicate that Plaintiff was "doing very well" and reported her right hand pain as only a 4/10 on January 22, 2021. (Tr. 919) This evidence is inconsistent with Plaintiff's hearing testimony.

Further, Plaintiff's subjective complaints of pain notwithstanding, objective medical evidence also demonstrates that Plaintiff's symptoms did not limit her ability to perform work related activities. *See* 20 C.F.R. § 416.945 (A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations."). Plaintiff maintained normal physical impressions throughout the relevant period, including reflexes, coordination, muscle tone, motor strength and

mobility of her upper extremities. (Tr. 213, 620–23, 632, 784, 787–88, 919) In July of 2018, Plaintiff reported plans to drive to and from Florida and that "she is thinking about preparing her home to care for foster children." (Tr. 537) In February of 2019, Plaintiff reported that she continues to knit and crochet. (Tr. 550) In March of 2019, Plaintiff reported returning from a trip to Florida where she helped care for her father. (Tr. 551) In July of 2019, Plaintiff reported flying to Florida and driving her father back to Connecticut. (Tr. 557) In light of the forgoing, the ALJ specifically found that Plaintiff's "functioning in relation to her physical symptoms is not as limited as alleged." (Tr. 55)

"Ultimately, [i]t is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts" in assessing a claimant's RFC. *Netter v. Astrue*, 272 F. App'x 54, 55 (2d Cir. 2008) (internal quotation mark omitted; alternations in original). The Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's pain did not preclude her reaching, handling and fingering at the frequency provided for in the RFC.

2.  ALJ Properly Assessed Plaintiff's Ability to Remain Sufficiently on Task

Plaintiff next claims that the ALJ improperly assessed her ability to remain sufficiently on task to maintain employment insofar as the ALJ failed to adequately consider her pain and mental health in assessing her RFC. The Commissioner responds that the ALJ properly assessed Plaintiff's ability to stay on task. The Court agrees with the Commissioner.

Medical evidence reveals that Plaintiff was treated for the following impairments: osteoarthrosis and allied disorders; depressive, bipolar and related disorders; disorders of back; carpal tunnel; substance addiction disorders (alcohol); and trauma and stressor related disorders. (Tr. 51) With respect to Plaintiff's subjective complaints of pain, Plaintiff testified at the February 25, 2021 hearing that she was unable to work due to her chronic neck and back pain, that she had

11

difficulty walking and standing for extended periods due to her back pain, and that she experiences chronic hand pain. (Tr. 53) Plaintiff testified that she spends most of her time lying down to try to alleviate her pain. (Tr. 54) With respect to Plaintiff's mental health, Plaintiff testified at the February 25, 2021 hearing that she has difficulty focusing and concentrating generally due to depression. (*Id*.) Plaintiff further reported that she attends weekly online sobriety meetings in connection with her history of alcohol abuse and alcohol dependence. (Tr. 54–55)

The ALJ found that Plaintiff had only a mild limitation in interacting with others and in understanding, remembering or applying information. (Tr. 52) The ALJ further found that Plaintiff had a moderate limitation in concentrating, persisting or maintaining pace. (*Id*.) Neither limitation, however, rendered Plaintiff disabled under the Act or precluded a finding that she could work. In assessing this aspect of the RFC, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record. (Tr. 54) Specifically, the ALJ found that Plaintiff could perform simple, routine tasks, use judgment limited to simple, work-related decisions, and deal with routine changes in the work setting. (Tr. 55) Substantial evidence supports the ALJ's determination.

At times during the relevant period, mental status examinations indicated that Plaintiff presented with anxious mood, restricted affect, impaired cognitive function, and limited insight and judgment. (Tr. 713, 834) And there is no question that Plaintiff reported various pains throughout the relevant period. Notwithstanding these limitations, objective medical evidence and other evidence of record demonstrates that Plaintiff's impairments did not limit her ability to perform work related activities. *See* 20 C.F.R. § 416.945 (A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations."). Plaintiff substantially continued her

activities of daily living, to include knitting, crocheting, caring for her father, caring for her grandchildren, and driving to and from Florida, and reported plans of preparing her home to care for foster children. (Tr. 201, 537, 550–51, 557) Moreover, the ALJ's consideration of Plaintiff's impairments is consistent with the opinions of State agency psychological consultants, Christopher Leveille, Psy.D., and Joanne Coyle, Ph.D., who concluded that Plaintiff had no more than moderate limitations with respect to her mental functioning. (Tr. 176–78, 215) The ALJ found their opinions to be persuasive, supported by objective evidence and consistent with generally stable mental status examinations. (Tr. 56) For example, throughout the relevant period Plaintiff consistently maintained normal findings with respect to her mood, affect, appearance, speech, memory, insight, judgment, thought content and thought processing. (Tr. 551, 620, 712, 806, 834, 846) Examination findings further demonstrated that Plaintiff had intact attention, concentration and fund of knowledge, and denied suicidal ideation or hallucinations. (Tr. 620, 712, 806, 834, 846) In light of the forgoing, the ALJ specifically observed "significantly normal objective findings and no longitudinal restrictions" with respect to Plaintiff's concentration and focus. (Tr. 55) The ALJ properly considered Plaintiff's pain and mental health in determining her ability to remain on task.

"[Plaintiff's] disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it." *Krull*, 669 F. App'x at 32. Substantial evidence supports the ALJ's finding that Plaintiff could remain sufficiently on task to maintain employment.

**Conclusion**

For the foregoing reasons, Commissioner's Motion to Affirm is GRANTED. (ECF No. 15) Plaintiff's Motion to Reverse or Remand is DENIED. (ECF No. 14) The Clerk of the Court is directed to enter Judgment in favor of the Commissioner and close the file.

**SO ORDERED** at Bridgeport, Connecticut, this 17th day of June 2022.

                                */s/ Kari A. Dooley*
                                KARI A. DOOLEY
                                UNITED STATES DISTRICT JUDGE